Mr. Tribus. May it please the Court, Stephen Tribus on behalf of Appellant ACCO Brands. The Board erred in reversing the examiner's well-founded obviousness rejections. The JP445 patent taught disconnecting the shredder motor to avoid paper jams when too much paper is fed to the shredder. That teaching applies equally to the claim function of not starting a shredder that is not yet running and to stopping a running shredder. The Board's legal conclusion cannot stand given the admitted facts and the facts found by the Board. It is conceded that the physical elements in the claim, the thickness detector, the presence sensor, are old and conventional in the prior art. The unchallenged findings of the Board is that a person of ordinary skill in the art would have had a reason to combine those elements together, and more, the Board found that the person of ordinary skill in the art had a reason to arrange them with a thickness detector first and a presence sensor second. Is it your view that the Board actually found that there was a motivation to combine the teachings of the JP45 with something like the GBC Shred Master? I couldn't tell if that analysis was skipped over and perhaps assumed and then just focused on the whole question of whether anything in the prior art taught or suggested using the thickness detector to prevent the starting of a motor. Your Honor, I think the Board did make that finding, that there was a reason to combine. They say that. They credit the testimony from the Ares Declaration which says that. They go on to continue the analysis and they seem to be looking for something in addition to what's there with regard to the configuration of the controller, but the evidence shows that the thickness detector is first and the presence sensor is second. The physical configuration alone does not dictate anything, but where those elements operate exactly as they did in the prior art, then a person of ordinary skill in the art would have understood that the resulting function would be as set forth in the claims. Perhaps let me start just briefly with how JP445 works. So the disclosure of JP445 is to use a thickness detector system so that when too much paper is put into the shredder, the thickness detector is activated and in the words of JP445, it says it disconnects the motor or it stops communication between the power supply and the motor. Now JP445 does not talk at all about how to begin to get the shredder running, but what is in the record is the fact that if the shredder was not yet running, if it had, for example, a manual on-off switch to be able to turn it on and too much paper was inserted prior to a user flipping the switch, the shredder would not start at that point. The disconnection that JP445 talks about would have happened and there would be no way for the motor to become energized. And similarly, when a presence sensor is used, as the board said, as an automated way to do the on-off function, when the presence sensor, if you will, tries to flip the switch, if there's a violation of the thickness detection, if there's too much paper in, then the teaching, one of ordinary skill in the art would have appreciated that nothing is going to happen at that point, that it's going to meet that functional language at the end of fellows claims and going to prevent the starting. And that comes really directly from the purpose of JP445 and the board also agreed with the evidence of record showing that the purpose of JP445 was to avoid paper jams before they began. And it's only in that way when both the configuration, there is a configuration that is present and those elements are operating as they are in the prior art. Now the board seemed to be looking for something more, but they did not ever complete the obviousness analysis. They stopped short and they said things like that it didn't net the physical placement of the elements didn't necessarily result in the claimed invention. And that, insofar as it goes, is true. The physical elements themselves, if they were operating some way different than the prior art, certainly could be programmed, a person of ordinary skill in the art would understand that, to do something else. But the thickness detector of JP445 and the patent says, in order to achieve that purpose of avoiding jams before they occur, that when the thickness violation occurs, there is this disconnection or this lack of communication between the power supply and the motor. And the presence sensor, like the GBC Shred Master and some of the others, indicate really all that is, is an automated on-off switch. When the presence is detected, it in essence does what a user might do with a manual on-off switch, turning it from on to off. JP445's broader teaching was never appreciated by the is to avoid having too much paper reach the shredder motor while the shredder motor is operating. That would be what would cause the jam. And the explicit purpose of JP445 is to avoid such a jam. So, when too much paper is fed and the thickness detector is tripped, if the machine were running, it would and JP445 talks in that language as if the shredder is running. But a person of ordinary skill in the art would appreciate, would have known at that time, that if the shredder was not yet running, that lack of communication between the power supply or that disconnection between the power supply and the motor would result in the shredder never starting. It would meet that language of preventing the starting of the energization of the motor because there simply isn't a connection in place at that point. The case here, we believe, is very similar to a number of the obviousness cases before this court that we've cited in our briefs such as Randall and PlaySmart and George Martin in the following sense. There really is no dispute on the fundamental facts that go to the question of obviousness here. The dispute is the legal conclusion of what is going to be drawn from those facts. And we submit that the only reasonable conclusion that can be drawn from the factual finding by the board, that the thickness detector, that there was a reason for the person of ordinary skill in the art to use the thickness detector system first, followed by the presence sensor system, and the part the board didn't appreciate, those operating exactly as they operate in the prior art, that the result of that would be the claimed invention. For that reason, like those cases, this is a question for this court to review de novo the conclusion that the board came to after its factual findings that set forth that. Those factual findings are unchallenged and we accept them, and Fellows has not challenged those factual findings. We submit that based upon those simple factual findings in this very predictable art, that this is an obvious invention over that prior art. Why do you think the board reached the conclusion that they did based on what they saw? You think there were things they didn't consider, or that it was a matter of reasoning? I think, Your Honor, in part they didn't consider, what they didn't consider is they looked, they seemed to look for, and they said things like that there wasn't an explicit disclosure in the prior art of not starting. And again, that's true as far as it goes. I think what the board did not do is go beyond that. They almost, the opinion in parts reads almost as if they're dealing with an anticipation rejection and looking for some very specific, explicit part in the prior art. They don't, I think the thing, Your Honor, that they never did was go complete the obviousness analysis and say, given the teachings of JP 445 and the other references on present sensing devices, would the person of ordinary skill in the art have understood how this was going to run with those pieces acting exactly as they are in the prior art? It is certainly true that one could achieve the elements of Fellow's claims in some other way, but the relevant point is there is a way in the prior art, in the way that the board talked about combining it with the thickness detector first and the present sensor second, and operating just as they operate in the prior art. So the thickness detector operates to stop or disconnect power, and if the, excuse me, if the shredder was running, then it would stop it. But if the shredder is not yet running, that disconnection results in a shredder that is not going to turn on. It's going to prevent the starting as set forth in that functional language at the bottom of Fellow's claims. And I would direct your honors, with regard to this, this specific evidence with regard to how this would operate is set forth in the Declaration of Mr. Aries, and he talks about, and in his declaration at A204647, paragraph 11, and then also his declaration continues over at A2981 in paragraph 16, talks about exactly what the person of ordinary skill in the art would understand the JP445 patent would accomplish if the shredder was not yet running. It is true that JP445 itself does not talk about how to turn the shredder on or off. It was focused very narrowly on the very specific invention of stopping jams before they occur by allowing or by requiring that the motor and the power source be disconnected. So let me see if I understand your argument. Your argument is, when it comes to paper shredders, everybody knows the value of a present sensor, or this auto-start functionality of turning on the shredder. Everybody also knew that jamming was a serious problem with paper shredders. And the better solution is to have a thickness detector that would prevent a jam from ever occurring, rather than some kind of jam sensor slash stopper that would shut down the shredder only after a jam had occurred. So therefore, it would be obvious to combine a present sensor and a thickness detector. Now the next question is, how would you put those pieces together? And according to JP445, you would put the thickness detector in the throat. The present sensor is already in the throat of the paper shredder. So I guess in your view, it would be obvious to have either configuration, thickness detector on top, present sensor below, or alternatively, present sensor on top, thickness detector below. The first option is necessarily renders this claim, meets all the claim limitations. And so therefore, the claim should have been, the rejection by the examiner should have been affirmed for obviousness. Is that basically your point? Yes, Your Honor. That is basically the point. The arrangement, there are a finite number of arrangements. In our briefs, we talked about two, as Your Honor just did, either the thickness detector first or the present sensor. Fellows offered perhaps a third one where they were at exactly the same point. But whether there's two or three, it fits within the case law of this court of a finite number of possibilities in a very predictable art with a very predictable solution. And if they're put thickness detector first, present sensor second, and operate according to the prior art way of being taught, that would render this claim obvious. But you know what I keep thinking? In this crowded art, if it's so obvious, couldn't the board have thought it's certainly obvious in hindsight, in retrospect? But it's so obvious, how come it hasn't been done? And now that these people, this company, did make this change, and it's of commercial value and interest. In retrospect, we say, oh, anybody could have done that. So I can go along and now make the change myself. And of course, this is a universal problem in, let's say, small differences in minor arts, where it does make a difference, and it does have a value. And so it's copied. And we say, we could have done it, but we didn't. Because why? We didn't feel like it. We didn't think of it. I'll answer Your Honor's question. I see I'm into my rebuttal time, so I'll try to answer quickly. Your Honor, I think that oftentimes there is that thought of, because this is not anticipated, it couldn't have been obvious. Here, the pieces of this, the JP 445 patent itself, really did solve the underlying problem of jamming. It solved the underlying problem of jamming by being able to shut that motor off before the paper got there. The minor incremental benefit of adding the automatic stop-start feature gets then to the entire claim. And that was really just a very minimal difference. And again, under this Court's precedence, that sort of minimal difference does not lead to the patentability of this claim. Your Honor? All right, let's hear from the other side, and we'll save your rebuttal time. Mr. Collins? May it please the Court, Brian Collins of Fellows, Inc. I think suffice it to say the parties have a different view on sort of the facts in general. Our view is actually before the Board, many, many facts were in dispute. We don't view this as a case of undisputed facts, for example. The Board had a dispute of what does JP 445 teach? It was a dispute of does it teach not starting, or is it limited to stopping? And is it capable of preventing jams because it doesn't allow enough time for paper to get into there? There were disputes about the scope and content of the prior art. There was disputes about how long the problem of shredder jamming had persisted. And Your Honor, Judge Newman, you raised the question of crowded art issue. And I think that becomes more of an issue when the problem has persisted for many, many, many years, and yet nobody has solved it. And that makes it a little bit different from the index systems type of case where there was an FCC order that said you have to have parental controls on your TVs, and all of a sudden, voila, the invention was created shortly thereafter. Factual disputes about what is and is not. If there was a long-felt but unsolved need, then perhaps that goes more to secondary considerations rather than the prima motivation to combine a thickness detector with a present sensor in a paper shredder. I think it goes to both here. ACCO did not offer a person of ordinary skill in the art. Basically, their view, they didn't identify one. So their view was the prior art itself tells you what the level of skill is, right? You can go read the patents. What we do when we do that is we don't just read the patents and the rejections, right? We read all the patents that kind of ascertain what the level of skill is. And in that sense, one must consider the 30-decade years of people trying to solve paper jamming over the years, including for many, many years even after JP445 came out or after presence detectors. So when you approach the prima fashion case from that and to the scope of content of the prior art, I actually believe the long-felt need for those types of references is actually part of the play because it's the only barometer we have for the level of skill in the arts that was not offered as part of the prima fashion case. So I believe it actually factors in both sides of this equation. Well, let's get to what to me is the heart of the case. I mean, to me, the heart of your case is your patent contribution is the idea of stopping jams before they occur. And that's what the occurring. Now on a certain fundamental level, that's what JP445 is also doing. Now it's true that JP445 is talking about after the motor's already running and then cutting off the power, whereas your invention based on the way your claim is drafted, the thickness detector prevents the motor from ever starting along with the present sensor. But now I get to the question if there is motivation to have a thickness detector from JP445 along with the addition of a present sensor, because there's obvious desire in the art to have that auto start functionality with a paper shredder, then I didn't see your red brief address the question at hand, which to me is if there's only a finite couple of arrangements or configurations of those two sensors in the throat of the paper shredder, why wouldn't each of those finite possibilities be obvious? And if one of those configurations is, in fact, follows your claim to invention, then doesn't it follow that your claim to invention is obvious? I believe the answer to that question is no. One reason is it does not appreciate that it's the controller that is making the decisions, which means the actual notion of finite options here is not even part of the claim. The claim doesn't claim a specific arrangement, nor does it require one, because the way the inventors approached this problem was not just to design, think about the shredder design, but you have to think about how the user interacts with it. And that is one problem in this industry is if users actually followed the instructions and did everything correctly, they wouldn't jam the shredder in the first place. Ever since someone came up with the first five-seat shredder, it wasn't long before somebody tried to shove in seven sheets. Let's put it that way. That's why the JP445 created the thickness detector that it created, because it understood, just like everybody else did, that people are going to, at times, overstuff a shredder. And that was a disputed fact. And the disputed fact was, did JP445 really understand that? If you read JP445, they talk about this gearbox issues, we want to make it smaller gearbox. But the one thing they didn't realize is when you try to stop an already running shredder, they didn't think about what the user does. Users don't slowly take a piece of paper and gently drop it in there. They walk up to shredders, they work in offices, they're busy, they shove them in. And that's what Mr. Matlin thought of as he said, why don't I think about having a controller that's more responsive? This is more than some of the mechanical parts, so to speak. And that's why it's not reliant on some specific mechanical arrangement. If one wanted to use the finite options in actuality, you don't even need the controller because you can use two circuit breakers. For example, JP445 has no controller at all. The GBC Shred Master, it has a controller and it's hooked up to GBC's present sensor. It's also hooked up to GBC's jam sensor. So why wouldn't you use the controller to likewise control the combination of a present sensor with instead of a jam sensor, with the thickness detector from JP445? That was a disputed fact that was squarely I mean, to me, I'm asking you to answer the question, why wouldn't that be obvious? We don't believe it would be obvious. Because? Because for a number of reasons. One, do we consider that as a starting point, the thickness detector, even as the starting point that one wants to use because there were many, many other approaches to this jamming problem that others had tried and failed and not done. And the question is, if we go to these finite options and put them right in the machine and just say, all that we have to do left is how do we configure that controller? The real starting point is, here's the problem in sort of that Winslow tableau of, here's all the different things that you could have out there. What do we do from there? The JP445, for example, someone might look at it and realize it didn't work very well. It was not adopted. It's still susceptible to jamming. It's also in an area where the paper flaps very violently. And that could have an effect on it. It's a circuit breaker. The power is running through the circuit. And do you want to have this violently flapping paper? Assume for the moment, I think the JP445 presented a solution to a problem with jamming by preventing the jamming from ever occurring. There are all these other things going on in the prior art about how to deal with a jam after it occurred. And JP445 was the first one to come up with the idea of, hey, let's cut off the power. Let's disconnect the power before a jam ever happens. So we've prevented the jam. Now let's say that one of our new skill in the art would want to have that feature and would want to have it with a presence sensor. So are you saying, if I believe all of those things, then therefore it would be obvious to have the configuration with the thickness detector first, the presence sensor second. It necessarily would meet the claim limitations? I believe the assumption is if everybody wanted all those parts in the machine, it's sort of, I think that's how they presented their case. It does beg the answer of, we've assumed that there's reasons to combine. We've assumed all those things to be true. What I want to change is to just put them in the controller. I do believe the finite arrangement really is not required by the claim. You wouldn't have to put one on top of the other with the way the invention is designed because it is a responsive control of the processes. I agree. But the point is, if one of our new skill in the art is making a combination based on the information it has, and it pieces them together in a way that just so happens to be what your claimed invention is, then regardless of whether your claimed invention is designed a different way, the obvious combination nonetheless would meet every single limitation of the claim. If you put all the parts together in the way claimed, yes. But if you put the thickness detector first and then you put the present sensor second, wouldn't that arrangement necessarily meet your claim limitations? The motor would not start until after the paper had successfully passed through the thickness detector and the present sensor. If they're coupled to the same controller, yes, because the paper goes down. That's true. Yes, that's the order that the paper would touch it and you're correct about that. Yes. So then that would call for a reversal, a vacate, and a remand. I don't believe that's true. I really don't believe that these finite options are exactly what's being looked at. I think the board considered that. There were a lot of disputed facts on this issue and they also considered other options. You know, finding a fact 37, they noted that the other reference, JP513, talked about shredder jamming problems and they opted to do an auto feed system. Well, in response to the argument by the other side about there being only one of two finite options in arranging the present sensor with a thickness detector, I didn't really see the board opinion take that argument on. It simply said there's no explicit teaching in any reference about using a thickness detector to prevent the starting of a shredder and then stopped right without taking the extra step and asking itself in response to the appellant's argument, what would happen if you added these two features together and why wouldn't they together prevent the starting of the motor? I didn't see a response to that question in the board's decision. I do believe they did tackle that in a lot more detail in the re-hearing decision and this sort of rubric was presented right to the board and I believe their answer on that one was, we find as fact, this is on A35, that neither the examiner nor the requester has proven by a preponderance of the evidence that one of ordinary skill in the art would have known as a matter of common sense or otherwise that a threshold detector upstream of a present sensor should have been used to prevent the starting or energization of the cutting mechanism in response to the part of the thickness detector moving to the second position. But that whole statement is based upon the notion that there's some patentable distinction between not starting and stopping, isn't it? I think that's a very important distinction. But it's kind of basically two ways of doing the same thing. If we find that not to be a distinction, will the rest of the board's opinion address that combination? If you were to say that they're not a distinction, well, in our mind, that coupled with a warning light that alerts the user why it has not started, which actually is important because if you don't start the shredder and people put paper in, they actually might think it's broken. So the light actually indicates that the shredder's alive, it's well, but I'm not starting for a reason. But I think that goes to the point of over decades and decades of dealing with this, everybody's solution was try to stop the jam, right? Stop these current sensors and things like that. EGP 445 tries to stop the shredder. Sure, I mean, I get that. This patent seems to be the first one to do it, but that doesn't mean it's not obvious. It just means they're the first one to do it. And maybe you have some strong secondary considerations why it's still not obvious over the prior art. But it seems to me the board failed to take the necessary step of looking at whether a person of ordinary skill would find any patentable difference between stopping and not starting. And I do believe you read the board's opinion as a whole. That was their point is that is patentable distinction. And that is a very important thing. And I do believe not just facts that factored in directly into their decision, but all the evidence that was argued before them really focused on that is a critical distinction. And just again, my concern is similar to Judge Hughes's, but it's slightly different. My concern is the board did not tackle the question of why wouldn't you have created a combination that resulted in preventing the starting of the motor once you've configured your obvious combination in a way that the thickness detector comes first and the present sensor comes second. And the board, what you quoted, and I read it too, it's really stating a conclusion. It's not really an analysis of why it wouldn't be the case that an arrangement like the one I just described would result in a shredder that doesn't start the motor until after the paper is successfully passed through both the thickness detector and the present sensor. And a lot of the argument is based on, I think what Acko characterizes is common sense, as to common sense, what's in the art, right? And I think this is where we get back into, I think, the mixed question of common sense is something that everybody knows, something that's persistent through the art. It's not common sense now. Now we're at a point where we have a configuration that, let's say for argument's sake, is an obvious combination to make. Why wouldn't that combination meet the claim limitation of starting the motor only after you've successfully passed through that thickness detector and the present sensor? I'm not sure. Could you restate the question? Sure. There's an obvious combination in my mind. The thickness detector comes first. The present sensor comes second. Okay. And only after you've successfully passed through both sensors does the motor for the shredder begin. To me, that is what the claim calls for. Why wouldn't that obvious combination and the ordering of the thickness detector and the present sensor render your claimed invention obvious? And I believe the answer to that is that, well, one, if you create a structure that meets all the elements of the claim, I have to say it meets all the elements of the claim. The question is, why would you put it together? You need the rationale to combine it. What's the motivation? Why would you have done that? We don't believe JP445 really provides that because it tells you to stop an already running shredder. And then you sit there and look at, what else does the art teach me? Because, again, this is when I go over the common sense. We have to look at what other options are out there. And the person of ordinary skill in the art, who is undefined for purposes of this case, is going to have to look at all the options. We don't really look at it and go, we have given you the skilled worker. These three things with this problem, please put them together in a way that solves the problem. Well, they only have a few options. What they do is say, you've been in this industry for 10 years. 30 different ways people have skinned the cat. Which path are you going to go down? Which one do you think is going to work better? We have to step back away from those options and start, I think, much further up the road where the fork is a lot wider. But maybe there's more than one obvious combination. Maybe there's multiple obvious combinations. And the concern I have is that when you know that you want to stop the shredder from jamming, and you know you want a present sensor, and then you would want to have both of those features together in a paper shredder. And the JP445 tells us to put the thickness detector in the throat of the paper feeder, just like your claim to mention. So now there's only a couple of different configurations left. And that's where I didn't see the board take that concern on. And I do believe it is background to their briefs also that we had this debate about the many years of this problem persisting, and the different ways of trying to approach it, and the lack of common sense that was in the art or evidence supporting the rationale combined. And that was really a lot of the debate that we had at the board below. I believe that even if some of those exact items of evidence might not be in their decision, that is substantial evidence that can be used to make a decision. Thank you, Mr. Collins. Okay, Mr. Dreyfus, you have your rebuttal time. Your Honors, I would just point to the board's decision. It's in the appendix at 826, footnote 7, where the board says, it appears the design incentive would have been to provide an automated way of turning on and off the shredder. The board there is talking about why we would put a present sensor on JP445. And that's the reason that the references teach the advantage of that automatic on-off. And using that automatic on-off with the thickness detector of JP445 would have made this invention obvious to a person of ordinary skill in the art. Submit also that simply, even if not going through the finite number of choices analysis, the concept that not starting something is non-obvious and patently distinct over a teaching of disconnecting the motor and stopping it because that shredder happened to be running is also not a patentable distinction. If your Honors have no further questions, thank you. Any more questions? Any more questions? Thank you. Thank you both. The case is taken under submission.